```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS


SHARON DAVIS,                        )
                                     )
            Plaintiff,               )
                                     )   CIVIL ACTION
v.                                   )
                                     )   No. 06-2144-KHV-JTR
                                     )
MICHAEL J. ASTRUE,¹                  )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
_____ )
```

## REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be AFFIRMED.

**I.   Background**

---

[1] On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff's applications for disability insurance benefits were denied initially, and she requested and received a hearing before an Administrative Law Judge (ALJ).  (R. 15, 25-29, 32).  Plaintiff was represented by an attorney at the hearing, and testimony was taken from plaintiff and a vocational expert.  (R. 15, 435, 436).  On Jul. 29, 2005, the ALJ issued a decision in which she found there are jobs within the economy which are within the residual functional capacity (RFC) of plaintiff.  (R. 15-24).  Consequently, the ALJ determined that plaintiff is not disabled within the meaning of the Act, and denied plaintiff's applications.

Plaintiff disputed the decision and sought review by the Appeals Council, which was denied.  (R. 11, 8-10).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 8); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

**II. Legal Standard**

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2005).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show

other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff "does not contest the ALJ's determination of the degree to which her physical impairments affected her RFC." (Pl. Br., 14).  Rather, she claims the ALJ erred in evaluating the opinion of her treating physician regarding mental impairments, failed to fully develop the record regarding her mental impairments, and therefore, presented a hypothetical question to the vocational expert which did not include all of the limitations imposed by plaintiff's mental impairments.  The Commissioner argues that the ALJ properly evaluated the medical opinions, adequately developed the record regarding mental impairments, and assessed an RFC which is supported by substantial evidence in the record as a whole.  Therefore, he argues, the hypothetical question propounded to the vocational expert included all of plaintiff's limitations and the expert's response constitutes substantial evidence that there is work in the economy of which plaintiff is capable.

**III. Evaluation of the Treating Physician Opinions**

Noting that her "psychiatrist at Swope Parkway Health Center evaluated Davis's Global Assessment of Functioning (GAF) at 40," plaintiff claims the ALJ relied upon her own lay opinion in finding that plaintiff has mild restrictions in activities of daily living; moderate restrictions in social functioning and in

-5-

concentration, persistence, or pace;[2] and no episodes of decompensation. (Pl. Br., 15) (citing (R. 422) and noting that a GAF score of 50 or less indicates serious symptoms or serious impairment in social, occupational, or school functioning). Plaintiff asserts "the ALJ did not take into consideration the GAF assessments of the treating doctors." Id. The Commissioner argues that substantial evidence in the record supports the ALJ's mental RFC assessment. (Comm'r Br., 7). He argues that a GAF score is not an accurate measure of the restrictions on an individual's capacity for work caused by mental impairments. Id. at 8. He argues that a GAF score includes the clinician's opinion of the social and occupational limitations <u>alleged by the patient</u> and may be decreased merely by the fact the plaintiff is alleging disability and is not working for whatever reason. Id. Finally he asserts, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listing.'" Id. (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000)).

---

[2] Although plaintiff argues the ALJ found <u>moderate</u> restrictions in concentration, persistence, or pace, the court notes the ALJ found plaintiff has "<u>mild to moderate</u>" difficulties in maintaining concentration, persistence or pace." (R. 20).

As plaintiff argues, an "ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." (Pl. Br., 16) (quoting Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004)).  But, an ALJ need not discuss every piece of evidence.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).  In making his decision, he must consider all the evidence, and discuss the evidence supporting his decision, the uncontroverted evidence upon which he chooses not to rely, and significantly probative evidence he rejects. Id.

The GAF score to which plaintiff cites is neither uncontroverted nor significantly probative, and in accordance with Clifton the ALJ's failure to discuss it is not error.  The court's review of the record reveals four instances in which a GAF score was recorded for plaintiff.  (R. 185)(GAF score 55, May 7, 2003); (R. 220, 239)(GAF score "60-51," Apr. 13, 2005); (R. 272)(GAF score 50, Apr. 30, 2003); and (R. 422)(GAF score 40, Sept. 9, 2003).  The GAF scores range from a low of 40 to a high of 60 during the period at issue.  Three times, the score was fifty or higher, and once the score was forty.  The score cited by plaintiff is not uncontroverted.

Moreover, the GAF score cited by plaintiff is not significantly probative. The evidence cited is a treatment note regarding a visit with a psychiatrist, Dr. Reddy, on Sept. 9, 2003. (R. 422). The court's review of the record reveals Dr. Reddy examined plaintiff only one time. The physician's objective report was simply that plaintiff had "some depression with appropriate affect," reported insomnia, and denied homicidal or suicidal ideation. (R. 422). The physician reported her "assessment" in five "Axis," I through V. Id. "AXIS-V" was reported as "40." Id. Although plaintiff did not explain how she determined that the "40" was a GAF score, the court notes that the American Psychiatric Association describes a "Multiaxial Assessment" procedure in which the fifth axis relates to a GAF score. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 25-34 (4th ed. 1994). Thus, the court finds that Dr. Reddy assigned a GAF score of 40. There is no further discussion of plaintiff's functioning abilities in Dr. Reddy's treatment note. There is no explanation of the GAF score by Dr. Reddy, and there is no record evidence that Dr. Reddy ever examined plaintiff before or after the visit recorded.

Although plaintiff cited only one GAF score which the ALJ failed to discuss, she argued that he failed to consider the "GAF assessments of the treating doctors." (Pl. Br., 15). The other GAF scores recorded are also not significantly probative. In no

case does the treatment provider highlight or explain the significance of the GAF score given. As discussed below, the ALJ considered the medical evidence regarding plaintiff's mental impairments, and the GAF scores as a whole do not compel a different conclusion. The court finds no error in the ALJ's failure to specifically discuss the GAF scores.

**IV.  Failure to Fully Develop the Record**

Plaintiff's argument that the ALJ failed to fully develop the record is not a model of clarity. She provides lengthy quotations from cases decided by the Eighth Circuit noting that an ALJ has a duty to fully and fairly develop the record even when a claimant is represented by an attorney, and that an ALJ should further develop the record where the medical opinions available to her are insufficient to allow her to make an RFC assessment. (Pl. Br., 18)(citing Lauer v. Apfel, 245 F.3d 700, 706 (8th Cir. 2001); and Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)).[3] After quoting these cases extensively, plaintiff states merely that "the ALJ needed to further develop the record with respect to Davis's mental impairments," and that

---

[3] The court is unsure why plaintiff cites to Eighth Circuit law which is neither binding nor persuasive precedent in this district since there is Tenth Circuit, binding precedent, directly on point as to these issues. See, e.g., Baca v. Dep't of Health & Human Serv., 5 F.3d 476, 479-80 (10th Cir. 1993)(duty to fully and fairly develop the record); White, 287 F.3d at 908 (duty to clarify or seek additional evidence where the available evidence is inadequate to make a decision).

the decision must be reversed as a matter of law because there is no medical evidence in the record which supports the ALJ's mental RFC assessment. The Commissioner argues that plaintiff does not explain what it is that is lacking in the record or the decision that would be sufficient to support the RFC assessment. He argues that the ALJ considered plaintiff's mental health records from 2003 through 2005, and it should be found that the ALJ properly developed the record.

The court rejects plaintiff's argument that there is no medical evidence in the record which supports the ALJ's mental RFC assessment. As the Commissioner argues, the ALJ considered and discussed in the decision many medical records regarding plaintiff's mental impairments. Here, the court notes some of those discussions tending to support the ALJ's RFC assessment. She noted a finding of a moderate severity of psychiatric illness in an intake evaluation on Apr. 30, 2003. (R. 18)(citing Ex. 8F/57-58)(R. 270-71). She discussed treatment notes from Truman Medical Center from Sept. 2003 through March 2005 indicating "intact attention and concentration, logical and goal directed thought processes, [] not a danger to self or others," occasional reports of voices and "being somewhat paranoid, but for only brief periods," and she noted the doctor opined the "mild paranoid thoughts might be intertwined with social anxiety." Id. (citing Ex. 7F & 11F)(R. 201-13, 409-17). She specifically

-10-

commented on an office visit on Mar. 21, 2005 in which plaintiff "complained of 'atypical' hallucinatory phenomena and paranoid thoughts which the doctor thought sounded more like social anxiety." Id. (citing Ex. 7F/1-2)(R. 202-02). She stated the results of the mental status exam performed that day: "Good grooming and hygiene. Cooperative behavior, normal motor activity with no abnormal movements. She was noted to have a depressed mood and labile affect. She was alert and oriented. Her attention and concentration were intact. She was logical and goal directed. Delusions and hallucinations are noted to be absent." (R. 18-19). She discussed treatment notes from May 10, 2005: Plaintiff had "a number of somatic complaints and social issues which were largely contributing to her symptoms," and was noted to have "MDD (major depressive disorder) in partial remission." (R. 19)(citing Ex. 11F/2-4)(R. 410-12). Contrary to plaintiff's assertion, there is medical evidence which supports the ALJ's mental RFC assessment. The court finds the ALJ fully and fairly developed the record regarding plaintiff's mental impairments and did not fail in this duty.

After discussing the medical evidence, the ALJ applied the psychiatric review technique and found that plaintiff has "mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild to moderate difficulties in maintaining concentration, persistence or pace and no extended

decompensation requiring significant medical intervention which was not drug related during the time at issue." (R. 20). As discussed above, this finding is supported by substantial evidence in the record. Later the ALJ assessed plaintiff's mental RFC "considering the entire record," and found that plaintiff "can have no more than occasional contact with the public," and "can perform jobs tasks [sic] which require simple tasks only." (R. 22).

To the extent plaintiff is arguing that an ALJ may only find RFC limitations which have been specifically stated by a medical source, that is not the law.

> The determination of RFC is an administrative assessment, based on all the evidence of how plaintiff's impairments and related symptoms affect his ability to perform work related activities. See Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *5; 96-8p, 1996 WL 37184 at *2. Because this assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." See Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999) (unpublished disposition). In addition, the final responsibility for determining RFC rests with the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 404.1546.

Williamson v. Apfel, No. 99-5192, 2000 WL 1114177 at *1 (10th Cir. Aug. 7, 2000). The court finds no error in the ALJ's development of the record, consideration of the treating physicians' opinions, or assessment of plaintiff's RFC.

Because plaintiff has failed to establish error in the ALJ's RFC assessment, she has necessarily failed to establish that the

hypothetical question based thereon did not include all functional limitations imposed by plaintiff's mental impairments. Therefore, plaintiff has not shown error in the final decision of the Commissioner.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. affirming the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 11th day of May 2007, at Wichita, Kansas.

                                            s/John Thomas Reid
                                            **JOHN THOMAS REID**
                                            **United States Magistrate Judge**